IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CR-481-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM OPINION |
| BRENT BREWBAKER, ) | |
| ) | |
| Defendant. ) | |

The court memorializes more particularly reasoning for its denial of defendant's motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, presented January 27, 2022, orally and in writing, upon conclusion of the government's evidence in its case-in-chief. (DE 206). As to count one of the indictment, the court promptly denied the motion. Remaining part taken under advisement, directed against counts two through six, to which the government responded in writing, (DE 208), was denied January 28, 2022, in oral order.

## BACKGROUND

Indictment returned October 21, 2020, charges defendant with one count of conspiracy to rig bids in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (the "Sherman Act count"), one count of conspiracy to commit mail and wire fraud, three counts of mail fraud, and one count of wire fraud. Defendant pleaded not guilty to all six counts upon arraignment December 14, 2021. Trial commenced January 24, 2022.

Evidence in the case consisted of documentary evidence and testimony of Joni Robbins ("Robbins") of the North Carolina Department of Transportation ("NCDOT"); Donald Joyce, Jr., ("Joyce"), the president of Pomona Pipe Products ("Pomona"); Jennifer Fields ("Fields"), a

Pomona employee; Lambert Rahn Sutton, a Contech Engineered Solutions LLC ("Contech") employee; Marguerite Thomas ("Thomas"), a Contech human resources employee; Linda Belscher, a Contech training manager; Chelsea Lenowska ("Lenowska"), a current employee of the Federal Bureau of Investigation ("FBI") and previous employee of the Department of Transportation's Office of Inspector General; and Lu Anne Workman ("Workman"), a Contech employee.

## DISCUSSION

A. Standard of Review

Rule 29 allows, "[a]fter the government closes its evidence or after the close of all the evidence," for "the court on the defendant's motion" to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The question before the court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could [find] the essential elements of the crime beyond a reasonable doubt." United States v. Millender, 970 F.3d 523, 528 (4th Cir. 2020). The court "consider[s] circumstantial as well as direct evidence, . . . allow[s] the government the benefit of all reasonable inferences from the facts proven to those sought to be established, and . . . assume[s] that the jury resolved all contradictions in the testimony in favor of the [g]overnment." United States v. Savage, 885 F.3d 212, 219-20 (4th Cir. 2018).

B. Analysis

1. Count One: Conspiracy to Rig Bids

Count one charges defendant with a violation of 15 U.S.C. § 1, commonly referred to as the Sherman Act or Sherman Antitrust Act. The elements of this crime, as the court instructed the jury, are: 1) that the conspiracy described in the indictment, that is, a conspiracy to suppress and

2

Case 5:20-cr-00481-FL   Document 228   Filed 02/08/22   Page 2 of 12

eliminate competition by rigging bids to the NCDOT, existed at or about the time alleged: from at least 2009 and continuing until at least March 2018; 2) that defendant knowingly joined this conspiracy; and 3) that the conspiracy described in the indictment either affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

As to the first element, the jury could credit, inter alia, the testimony of Joyce and Lenowska and conclude that a conspiracy to rig bids to the NCDOT existed from at least 2009 until at least March 2018. As to the final element, evidence showed that, as part of the alleged conspiracy, Contech sent aluminum pieces from Kentucky to Pomona in North Carolina for fabrication and installation.

Defendant focused argument on the second element, asserting that there is insufficient evidence that defendant joined a conspiracy. The court disagrees.

"The government must prove the defendant['s] intentional participation in the conspiracy to rig bids." United States v. Smith Grading & Paving, Inc., 760 F.2d 527, 533 (4th Cir. 1985). "The essence of [a conspiracy] is an agreement to commit an unlawful act."[1] United States v. Shabani, 513 U.S. 10, 16 (1994). The "knowing and voluntary agreement" required for a conspiracy "need only be a 'tacit or mutual understanding' between the defendant and his accomplice." United States v. Hackley, 662 F.3d 671, 679 (4th Cir. 2011); see, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553 (2007) ("'[T]he crucial question' is whether the challenged anticompetitive conduct 'stem[s] from independent decision or from an agreement, tacit or express.'" (quoting Theatre Enters., Inc. v. Paramount Film Distrib. Corp., 346 U.S. 537, 540

---

[1] The court, in denying the motion to dismiss the indictment in which defendant joined, explained that bid-rigging, defined as "[a]ny agreement between competitors pursuant to which contract offers are to be submitted to or withheld from a third party constitutes bid rigging," is per se illegal under the Sherman Act. (Mar. 16, 2021, (DE 79 at 6, 10 (quoting United States v. Portsmouth Paving Corp., 694 F.2d 312, 325 (4th Cir. 1982))).

3

(1954))); Frey & Son v. Cudahy Packing Co., 256 U.S. 208, 210 (1921) (explaining that the "essential agreement, combination or conspiracy might be implied from a course of dealing or other circumstances"); Pittsburgh Plate Glass Co. v. United States, 260 F.2d 397, 401 (4th Cir. 1958) ("[A] common purpose and plan may be inferred from a development and a collocation of circumstances." (quotation omitted)), aff'd, 360 U.S. 395 (1959).

For example, the United States Court of Appeals for the Fourth Circuit, in United States v. W.F. Brinkley & Son Const. Co., 783 F.2d 1157 (4th Cir. 1986), considered an argument by defendants that they had only "acted unilaterally" in regard to a bid to Elizabeth City, North Carolina, for a municipal construction contract. Id. at 1158, 1160. The court agreed that in deciding within their company "not to submit a competitive bid," defendants had acted unilaterally but explained "they went beyond unilateral action when they contacted [another bidder] requesting a safe number to bid and [that bidder] consented to give them one." Id. at 1160. The court held that "[a]t that point, there was an agreement between two competitors pursuant to which bids would be submitted to Elizabeth City" and that "[s]uch an agreement is clearly bid rigging." Id. at 1160 (emphasis added).

Here, the evidence adduced at trial, viewed in the light most favorable to the government, describes a factual situation reasonably analogous to that in Brinkley. The government's witnesses testified that defendant repeatedly solicited Pomona's bid price from Pomona representatives prior to the submission of Pomona and Contech's bids to the NCDOT. The evidence is such that a reasonable fact finder could conclude that defendant, acting for Contech, and representatives of Pomona came to an implicit agreement, reinforced by their course of dealing over a decade, that Pomona would provide its bid price so that Contech could submit a losing bid, masquerading as a competitor's bid. Like Brinkley, defendant, on Contech's behalf, could have independently

4

decided to submit a losing bid, but he went beyond unilateral action when he reached out to Pomona representatives for their bid price, which was, in effect, the provision of a "safe number" for Contech to bid. If the government's evidence is credited, a reasonable juror could conclude, beyond a reasonable doubt, that when Pomona representatives consented to give this number with the understanding that they were providing Contech a bid price that allowed it to submit an intentionally losing bid, "there was an agreement between two competitors pursuant to which bids would be submitted to [the NCDOT]." Id. at 1160.

    2.    Count Two: Conspiracy to Commit Mail and Wire Fraud

Count two of the indictment charges defendant with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349. The elements of this crime are 1) that two or more persons agreed to commit mail and wire fraud, violative of 18 U.S.C. §§ 1341 and 1343; and 2) that defendant willfully joined the conspiracy with the intent to further its unlawful purpose.

As to the first element, the "knowing and voluntary agreement" required for a conspiracy, as already stated, "need only be a 'tacit or mutual understanding' between the defendant and his accomplice." Hackley, 662 F.3d at 679. "[E]vidence tending to prove a conspiracy may consist of a defendant's 'relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy.'" United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996) (alterations in original) (quoting United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984)). "[E]vidence sufficient to support a conspiracy conviction need not exclude every reasonable hypothesis of innocence, provided the summation of the evidence permits a conclusion of guilt beyond a reasonable doubt." Id.

Much of the same evidence from which a reasonable trier of fact could find a partnership in crime as to count one also supports existence of a criminal agreement as to count two. The

nuances of the intent required for the substantive fraud defenses are addressed below. However, evidence presented at trial, crediting Joyce, Fields, and Workman's testimony, is sufficient for a reasonable juror to conclude that defendant agreed to a scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises that used the mails and interstate wires; namely, that they agreed to submit bids to the NCDOT that each side of the scheme knew would include false certifications of non-collusion and competitiveness. See also Ocasio v. United States, 578 U.S. 282, 288 (2016) ("A defendant must merely reach an agreement with the specific intent that the underlying crime be committed by some member of the conspiracy." (quotation omitted)).

As to the second element, "the [g]overnment need not prove that the defendant knew the particulars of the conspiracy or all of his coconspirators." United States v. Seigler, 990 F.3d 331, 337 (4th Cir. 2021) (quotation omitted). "[I]f the defendant 'joins the conspiracy with an understanding of the unlawful nature [of it] and willfully joins in the plan on one occasion,'" this is sufficient, "even if he lacks an understanding of its scope or its details." Id. (quoting Burgos, 94 F.3d at 858); see also United States v. Falcone, 311 U.S. 205, 210-11 (1940) ("Those having no knowledge of the conspiracy are not conspirators, and one who without more furnishes [aid to a crime] is not guilty of conspiracy even though his [aid] may have furthered the object of a conspiracy . . . of which the [defendant] had no knowledge."). "[U]pon establishing the conspiracy, only a slight connection need be made linking a defendant to the conspiracy to support a conspiracy conviction, although this connection also must be proved beyond a reasonable doubt." Burgos, 94 F.3d at 862.

Here, the court views, as relevant, evidence of defendant's instructions to Workman, communications to Fields, discussions with Joyce, statements to law enforcement, and training on

6

compliance with anti-trust law. This evidence, viewed in the light most favorable to the government, would allow a juror to reasonably conclude that defendant willfully joined this agreement, knowing its unlawful nature, and intended to further the scheme to obtain money or property by means of false representations.

3. Counts Three Through Six: Mail and Wire Fraud

Counts three through six of the indictment charge defendant with substantive mail and wire fraud offenses, in violation of 18 U.S.C. §§ 1341, 1343, respectively. The elements of these crimes are: that 1) the defendant knowingly devised or participated in a scheme or artifice to obtain money or property by means of false or fraudulent pretenses, representations, or promises; 2) the pretenses, representations, or promises were material, that is, it would reasonably influence a person to part with money or property; 3) the defendant did so with the intent to defraud; and 4), that, in advancing, or furthering, or carrying out this scheme to defraud, the defendant used the mails or caused the mails to be used in relation to the mail fraud counts, or that the defendant transmitted any writing, signal, or sound by means of a wire communication in interstate commerce or caused such a transmission in relation to the wire fraud count.

For mail or wire fraud, "a defendant must specifically intend to lie or cheat or misrepresent with the design of depriving the victim of something of value" or specifically intend "to deceive or cheat someone . . . for personal financial gain." United States v. Raza, 876 F.3d 604, 622-23 (4th Cir. 2017) (quotation omitted); United States v. Brandon, 298 F.3d 307, 311 (4th Cir. 2002) ("The 'scheme to defraud' clause . . . is to be interpreted broadly, and requires that the defendant act with the specific intent to deceive or cheat, for the purpose of getting financial gain for one's self or causing financial loss to another."). However, more than a "mere intent to deceive" is required. Raza, 876 F.3d at 623.

7

The requisite intent may "be inferred from the totality of the circumstances and need not be proven by direct evidence." United States v. Godwin, 272 F.3d 659, 666 (4th Cir. 2001). "Evidence of motive indicates a likelihood of specific intent." United States v. Schnabel, 939 F.2d 197, 202 (4th Cir. 1991). "And evidence of financial gain is particularly probative in a fraud case to establish the defendant's intent to defraud." United States v. Bajoghli, 785 F.3d 957, 966-67 (4th Cir. 2015). "[I]ntent can be inferred from efforts to conceal the unlawful activity, from misrepresentations, from proof of knowledge, and from profits." United States v. Beverly, 284 F. App'x 36, 40 (4th Cir. 2008) (quotation omitted).

The government has offered evidence, viewed in its favor, of defendant's knowing participation, either as a principal or by aiding and abetting, in schemes on the dates alleged in the indictment to obtain money by means of false representations to the NCDOT that were advanced by use of the mails and use of wire communications in interstate commerce. The testimony of Robbins, viewed in the light most favorable to the prosecution, could lead a rational trier of fact to find the essential element of materiality beyond a reasonable doubt as to counts three through six. Further, the conspiracy participants knew or should have reasonably expected that the bids would be submitted by mail, and they, at times, used wire communications in interstate commerce.

Defendant focuses his argument for acquittal on these counts on his ostensible lack of an intent to defraud. The court determined in its oral ruling that the evidence, allowing the government the benefit of all reasonable inferences from the facts, would permit a rational trier of fact to find this element beyond a reasonable doubt in regard to the four relevant counts.

The government's evidence permits a reasonable inference that defendant intended to lie or aid others in lying on the bid certifications for personal financial gain, depriving the NCDOT of revenue it would not have otherwise distributed. Evidence, if credited, indicates that defendant

8

sought to conceal at times evidence of the communications about bid prices, manipulated Contech's bid prices to appear non-collusive, and reacted negatively to being confronted about the legality of his conduct.

Additionally, jurors could, relying on the testimony of Thomas and Workman, infer the goal of personal financial gain from the following evidence if viewed in the light most favorable to the government: defendant received bonuses based on Contech's performance during the conspiracy period; Pomona would purchase materials from Contech for successful aluminum structure bids; and defendant, at various points during the conspiracy, thought that NCDOT needed two or three bids to award a contract. See Bajoghli, 785 F.3d at 966-67 ("[E]vidence of financial gain is particularly probative in a fraud case to establish the defendant's intent to defraud."). Therefore, defendant contributed to the false representation that there was a competitive, two-to three-participant bidding process in order for Pomona to win the bid, as would result tangentially in defendant receiving a financial incentive, when NCDOT, in defendant's belief, would not have awarded any contract if there were not enough bidders.

Moreover, even assuming the government's evidence had been sufficient to only show that the scheme benefited Pomona or Contech, defendant's intent, inferred from his conduct, to deceive NCDOT in order to benefit either corporate entity would be sufficient. United States v. Sorich, 523 F.3d 702, 709 (7th Cir. 2008) (explaining that "to the extent that 'personal,'" as used in referencing the intended personal gain underlying an intent to defraud, "connotes gain only by the defendant, it is misleading. By 'private gain' [the court] simply mean[s] illegitimate gain, which usually will go to the defendant, but need not"); United States v. Levy, 513 F. App'x 858, 860 (11th Cir. 2013) ("[A] party is no less culpable for a fraudulent scheme if he intends the benefits of the fraud to accrue to third parties.").

9

On the basis of government's evidence, the NCDOT would likely not have paid out money if it had known that the bidders' certifications were false, and therefore it was deprived of revenue, that is, money, due to fraud in which defendant participated. United States v. Adler, 186 F.3d 574, 577 (4th Cir. 1999) ("Although all property rights are, like any other legal right, intangible, the underlying property in this case—the money—is not."); United States v. Hoffman, 901 F.3d 523, 538 (5th Cir. 2018) (describing "government . . . revenue" as "property under" relevant Supreme Court law). Therefore, based on the government's evidence, defendant, principally or secondarily, engaged in "cheating [NCDOT] out of money" it would not have otherwise paid out. United States v. Wynn, 684 F.3d 473, 478 (4th Cir. 2012); see also, e.g., United States v. Del Valle, 674 F.3d 696, 704 (7th Cir. 2012) ("[W]hether or not jobs are 'property,' the money paid for the job (that is, the salary) is 'money.' The City of Chicago did not get the employees that it wanted to hire and thus was cheated out of money."). Like the defendant in Wynn, whose company was being paid by the county to perform certain services and who relied on a fraudulent seal that would likely mislead government authorities into believing that his plans had been legitimately permitted, id. at 479, defendant was able to be indirectly paid or otherwise incentivized for the services Contech performed for Pomona due to Pomona winning a bid that, in the light most favorable to the government, relied on Contech and Pomona's fraudulent bid executions that misled the NCDOT into believing that the bids had been legitimately submitted.

Defendant marshals two arguments to contest these conclusions: first, that there is no evidence that defendant and Pomona witnesses intended to defraud the NCDOT; second, that the NCDOT was not deprived of a property right.

As to the first argument, defendant relies on his description of Pomona representatives' testimony that they testified they did not intend to defraud the NCDOT. However, the evidence

taken in the light most favorable to the government, taking reasonable inferences therefrom, supports that Pomona representatives specifically intended to misrepresent the collusive and non-competitive nature of their and Contech's bids to NCDOT by lying on the execution with the design of personal financial gain by winning bids. They agreed with Contech to provide their bid price information, knowing this made their bid collusive, and thus the concomitant certification false, as well as knowing from the Pomona-Contech course of dealing during the conspiracy period that Contech would submit a losing bid that also falsely claimed to be non-collusive.

Defendant's second argument is inapposite. His reliance on cases concerning the government's "intangible rights of allocation, exclusion, and control," Kelly v. United States, 140 S. Ct. 1565, 1572 (2020) (quoting Cleveland v. United States, 531 U.S. 12, 23 (2000)), is misplaced where the "property" at issue here is "money," which is enumerated in each statute. 18 U.S.C. §§ 1841, 1843. As the Supreme Court's opinion explained, the Kelly defendants acted "[f]or no reason other than political payback" and not to cause the city to pay "the cost of . . . employees' services[, which] would qualify as an economic loss to a city . . . sufficient to meet the federal fraud statutes' property requirement," just as much as if "if the [defendants] took cash out of the city's bank account." Kelly, 140 S. Ct. at 1573-74 (emphasis added). The government's theory of the case, as supported by evidence presented at trial, was that defendant intended money to be paid by the NCDOT that it would not have paid out had it known of the deceptive fraud in which defendant participated, that is, the fraudulent bid certifications that defendant caused to be signed.

4. Renewed Motion

Rule 29 also allows for a defendant to "renew such a motion . . . after a guilty verdict." Fed. R. Crim. P. 29(c)(1). Defendant so moved after the jury returned its verdict of guilty as to all six counts.

11

At conclusion of the government's case-in-chief, after denial of his motion, defendant presented testimony of Chris Beaty ("Beaty"), vice president of Pomona, and Juli Weidle, née Pierson ("Weidle"), another employee of Pomona, together with certain documentary evidence.

The court found no cause in this evidence to deviate from its ruling at the close of the government's case. For the same reasons, the renewed motion also was denied.

## CONCLUSION

Based on the foregoing, defendant's motion for judgment of acquittal (DE 206) was denied.

Date: February 8, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge

12

Case 5:20-cr-00481-FL   Document 228   Filed 02/08/22   Page 12 of 12